FILED
 2010 Mar-25  PM 04:15
U.S. DISTRICT COURT
    N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **WILLIAM COONROD,** | } |
| **Plaintiff,** | } |
| v. | } Case No.: 5:09-CV-0204-RDP |
| **MICHAEL J. ASTRUE, Commissioner Social Security Administration,** | } |
| **Defendant.** | } |

## MEMORANDUM OF DECISION

Plaintiff William Coonrod brings this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act ("the Act") seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying his applications for disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") benefits. *See* 42 U.S.C. §§ 405(g), 1383(c). For the reasons outlined below, the court finds that the decision of the Commissioner is due to be affirmed, as it is supported by substantial evidence and proper legal standards were applied.

**I.   Procedural History**

Plaintiff filed applications for a period of disability, DIB, and SSI on June 12, 2007. (Tr. 115-22, 127-29, 130-37). Plaintiff alleges a disability onset date of July 2, 2007. (Tr. 130). Plaintiff's applications were denied and he requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 18). Plaintiff's case was heard by ALJ Joseph F. Gilliland on September 11, 2008. (Tr. 47-64, 102-106, 111).[1] In his November 5, 2008 decision, the ALJ determined that Plaintiff suffers from severe impairments of a depressive disorder, hypertension, and Type II diabetes. However, the ALJ

---

[1] Plaintiff attended the ALJ hearing unrepresented by an attorney. (Tr. 51; Doc. #1).

further determined that Plaintiff was not under a disability, as defined in the Act, from July 2, 2007 through the date of his decision, and that Plaintiff retains the residual functional capacity ("RFC") to perform a range of light work. (Tr. 30-35). The Appeals Council denied Plaintiff's request for review of the ALJ's decision on January 28, 2009. (Tr. 1-6). Plaintiff timely filed a general complaint form for *pro se* litigants on February 3, 2009. (Doc. #1).

Plaintiff brings this appeal unrepresented by an attorney, after dismissing two previous attorneys. (Doc. #1; Tr. 51, 36-39, 114, 189). On May 8, 2009, Plaintiff was notified of the court's schedule for filing briefs in support of his claim, but subsequently failed to submit a brief within the allotted time. (Doc. #8). On July 20, 2009, a Memorandum in Support of the Commissioner's Decision was filed on behalf of the Commissioner. (Doc. #9). On September 15, 2009 the court received a letter from Plaintiff entitled "Legal Argument." (Doc. #10). The court construed Plaintiff's letter as a motion for an extension of time to file his brief in support of his appeal. The court granted Plaintiff's motion and urged him to secure representation. (Doc. #11). Plaintiff filed another document titled "Legal Argument" on February 18, 2010.

Plaintiff was born December 30, 1955 and has a high school education, as well as a one-year diploma in accounting. (Tr. 49, 60, 130). Plaintiff claims he has been unable to perform substantial gainful activity since the date of his alleged onset of disability, July 2, 2007, due to high blood pressure, heart disease, anger issues, depression, diabetes, and dental problems. (Tr. 57-63, 173). Plaintiff testified that he takes the blood sugar medicines Metformin and Glyburide daily, but only tests his blood sugar level every other day. (Tr. 52). At various other times, Plaintiff has been prescribed Amlodipine, Hydrochlorothiazide, Lisinopril, and Carvedilol for his heart and blood pressure, as well as Citalopram ("Celexa") and Paroxetine ("Paxil") for his depression. (Tr. 187-88,

190). It was Plaintiff's testimony that he has visited mental health professionals on several occasions regarding his anger and depression. (Tr. 63). Plaintiff also testified that his activities are limited and that he has largely withdrawn from socialization due to anger problems. (Tr. 55). Plaintiff occasionally attends church services but doesn't like to leave his apartment for fear of being arrested for overdue child support. (Tr. 55-56). Plaintiff also stated that he has at least one tooth that needs attention and that he has pulled four other teeth without the assistance of a medical professional. (Tr. 52). Plaintiff alleges that he attempts to exercise most days but is unable to walk long distances because of weakness in his legs. (Tr. 54).

Prior to his alleged onset date of disability, Plaintiff was employed as a security guard, file room clerk at a health center, telemarketer, and as a representative for Cingular and AT&T Wireless. (Tr. 56, 60, 58, 61, 150). However, a substantial portion of Plaintiff's professional life was spent as a civilian worker for the United States military. (Tr. 59). While in this position, Plaintiff worked as a Unit Administrator and was responsible for accommodating the needs of reservists. (*Id.*). A Vocational Expert, Melissa Neal, who is familiar with Plaintiff's case, testified that a Unit Administrator is equivalent to that of an Administrative Assistant. (Tr. 61).

In an Activities Questionnaire completed by Plaintiff, he explains that his difficulties in securing employment emanate from his depression and dislike of being around others. (Tr. 159). He only socializes with family members once a week buts speaks to them daily by telephone. (*Id.*). Additionally, he leaves his home at least once a day – generally to go to the gym, check the mail, go to doctor's appointments, and walk. (*Id.*). According to Plaintiff, his medication makes him feel unbalanced, dizzy, weak, and impairs his vision. (Tr. 160). He alleges that these side effects require

that he take a break every two hours. (*Id.*). Plaintiff states that he is aware that he has an illness and anger, but now is focusing on his health and needs time for recovery. (Tr. 161).

On multiple occasions from January to June 2007, Plaintiff visited Mr. Dibyajiban Mahapatra, a doctor of internal medicine. On January 19, 2007, Dr. Mahapatra's clinical impression of Plaintiff is that he suffers from uncontrolled hypertension, Type II diabetes, underlying stress and anxiety, and mild renal insufficiency due to hypertension. (Tr. 194). Plaintiff was placed on medication, and received recommendations regarding lifestyle changes and a dietary plan. (*Id.*). During most of Plaintiff's visits, Dr. Mahapatra noted improving hypertension. (Tr. 190-94). On June 7, 2007, Dr. Mahapatra noted that Plaintiff remained under tremendous stress but had reduced hypertension and had controlled Type II diabetes. (Tr. 190). Dr. Mahapatra recommended Plaintiff continue his medications, quit smoking, and follow-up in three months. (*Id.*).

Plaintiff was seen as a walk-in at the Birmingham Veterans Administration ("VA") Medical Center on February 21, 2007. (Tr. 223-26). Plaintiff sought blood pressure medicine and reported he was stressed out after losing his job in the military, however, he did not want any medication for stress at that time. (Tr. 223).

Plaintiff was seen as a new patient on March 12, 2007 at the VA primary care clinic in Huntsville, Alabama. (Tr. 213). Plaintiff stated that he was having some problems with walking, especially walking up a flight of stairs or uphill, as he gets short of breath. Plaintiff denied having the same difficulties on level ground or experiencing any chest pain. It was noted that Plaintiff was not very active, sitting at a desk for eight hours a day with little or no activity, and did not exercise when he got home. It was further noted that Plaintiff was stressed because of his workload and his inability to find the work that he was doing, recently going through a divorce, and having to pay child

support which was taking a lot of his money to the point that he cannot afford to buy insurance. Plaintiff was diagnosed with hypertension controlled with medication, a family history of diabetes, a questionable hole in his heart, and a mild/dull situation adjustment reaction. (*See* Tr. 214).

On April 25, 2007, Plaintiff sought treatment for depression at the VA hospital. (Tr. 211-12) Plaintiff's chief complaint was that he had been very irritable, but conveyed a sense of sadness, social isolation, loss of interest in daily activities, lack of motivation, agitation, poor appetite, and some sleep disturbance. (*Id.*). Attending physician Dr. Gilbert Zoghbi characterized Plaintiff as alert, well-groomed, with good personal hygiene. (*Id.*). His speech was also clear and spontaneous and his thought processes coherent. (Tr. 204-05). Plaintiff denied having suicidal thoughts, was found to be negative for hallucinations and delusions, and his judgment and insight were noted as fair. (Tr. 205, 208, 212). Plaintiff was diagnosed with depression not otherwise specified, hypertension, moderate stressors, and a Global Assessment of Function ("GAF") score of 55.[2] (Tr. 205). Plaintiff was given a trial of Paxil, explained the risks and benefits, and told to return to the clinic in six to eight weeks. Plaintiff was administered an echocardiogram on May 1, 2007, which reported grade 1 diastolic dysfunction, hyperdynamic LV function with no significant resting LVOT gradient. (Tr. 207, 211).

Plaintiff returned to the VA hospital for a follow-up appointment for treatment of his depression on June 8, 2007. (Tr. 209). It was noted that Plaintiff felt less angry and less depressed since starting the Paxil, but was more sedated in the morning. (*Id.*). Plaintiff's diagnosis was that

---

[2]On December 19, 2007, Plaintiff was assigned a Global Assessment of Function ("GAF") score of fifty-five (55) despite having been off Paxil for several months and Celexa for several weeks prior. Tr. (Tr. 314). In February, April and May 2008 Plaintiff's GAF score was again assessed at fifty-five (55). (Tr. 301-02; 295, 283). However, in July 2008, Plaintiff's GAF score was assessed at fifty (50). (Tr. 286, 343).

of depression not otherwise specified with improvement and hypertension. (Tr. 210). On June 11, 2007, Plaintiff called the VA hospital because he was having to urinate 3-4 times at night and that his prescription of Paxil was making him too drowsy during the day, even when taken as directed by Dr. Harris. (Tr. 208). Plaintiff was instructed to reduce his intake of Paxil to determine if it would cut down the prolonged effect of drowsiness. (Tr. 209). However, apparently the original dosage was restored after Plaintiff reported a return of his anger and depression. (*Id.*).

Plaintiff returned to the VA hospital on June 29, 2007, earlier than his regularly scheduled appointment for treatment of his depression. Plaintiff reported side effects from both his psychotropic and non-psychtropic medications. Plaintiff did not complain of excessive sedation since taking Paxil earlier in the morning. Plaintiff did complain of an upset stomach and excess urination. It was noted that Plaintiff was taking a Bayer aspirin for tooth pain on an empty stomach and this could be the cause of his stomach irritation. It was also noted that Plaintiff benefitted from taking the Paxil in that he has less anger and sadness. (Tr. 208).

During the period from July 3, 2007 through August 6, 2007 Plaintiff sought treatment at the Mental Health Center of Madison County. (Tr. 227-33). Plaintiff again reiterated his history of anger. At the July 3, 2007 visit, Plaintiff's medication was switched from Paxil to Celexa. By August 6, 2007, Plaintiff reported that he was beginning to feel like himself, was on the road to recovery, not as stressed out even though he was behind on all of his bills, he was thinking clearer and not as negative. (Tr. 227). He again denied having delusions or hallucinations. (Tr. 230).

Plaintiff was administered a mental RFC assessment on October 8, 2007 by Dr. Donna Scott of the Huntsville Mental Health Center. (Tr. 258-62). The RFC assessment was based on records from the Huntsville Mental Health Center. (Tr. 264-68). Dr. Scott opined that Plaintiff would be

difficult to work with because of his paranoia. (Tr. 260). Dr. Scott also stated that Plaintiff's depression caused focus and concentration problems. (*Id.*). The ability of Plaintiff to perform unskilled work was found to be seriously impaired in several areas such as ability to maintain punctuality, sustain ordinary routine without supervision, make simple work-related decisions, complete a normal workday, maintain a constant pace, and ability to ask simple questions. (*Id.*). Plaintiff was also found to be unable to meet competitive standards in regard to accepting criticism from supervisors, respond to changes in work setting, and deal with normal stress. (*Id.*).

An additional mental RFC assessment was performed by a DDS examiner on September, 26, 2007. (Tr. 252-55). This assessment found Plaintiff moderately limited in his ability to understand and remember instructions. (Tr. 252). Plaintiff was also found to be moderately limited in his ability to carry out detailed instructions and maintain attention and concentration. (*Id.*). His ability to work in coordination with proximity to others without distraction was likewise impaired. (*Id.*). The DDS examiner also determined that Plaintiff was moderately impaired in his ability to accept criticism and instruction, as well as in his ability to interact with the general public. (Tr. 253). The DDS examiner ultimately concluded that Plaintiff would have trouble with more detailed tasks but could be expected to carry out and remember short simple instructions. However, the examiner went on to state that Plaintiff's interaction with the public should be limited and infrequent. (Tr. 254). An assessment performed by a state agency medical consultant reached similar conclusions. (Tr. 237-51).

**II.     ALJ Decision**

Determination of disability under the Social Security Act requires a five step analysis. *See* 20 C.F.R. § 404.1 *et. seq.* First, the Commissioner determines whether the claimant is working. Second, the Commissioner determines whether the claimant has an impairment which prevents the

performance of basic work activities. Third, the Commissioner determines whether claimant's impairment meets or equals an impairment listed in Appendix 1 of Part 404 of the Regulations. Fourth, the Commissioner determines whether the claimant's RFC can meet the physical and mental demands of past work. The claimant's RFC is what the claimant can do despite his impairment. Finally, the Commissioner determines whether the claimant's age, education, and past work experience prevent the performance of any other work. In making this final determination, the Commissioner will use the Medical-Vocational Guidelines in Appendix 2 of Part 404 of the Regulations when all of the claimant's vocational factors and the RFC are the same as the criteria listed in the Appendix. If the Commissioner finds that the claimant is disabled or not disabled at any step in this procedure, the Commissioner will not review the claim any further.

The court recognizes that "the ultimate burden of proving disability is on the claimant" and that the "claimant must establish a *prima facie* case by demonstrating that he can no longer perform his former employment." *Freeman v. Schweiker*, 681 F.2d 727, 729 (11th Cir. 1982) (other citations omitted). Once a claimant shows that he can no longer perform her past employment, "the burden then shifts to the [Commissioner] to establish that the claimant can perform other substantial gainful employment." (*Id.*).

The ALJ found that Plaintiff has not engaged in substantial gainful activity since April 14, 2005, his alleged onset date of disability. (Tr. 27). The ALJ determined that Plaintiff has a number of severe impairments, including depressive disorder, hypertension, and Type II diabetes. (*Id.*). Although the ALJ found Plaintiff's impairments to be severe, he determined that his impairments fail to meet or medically equal the criteria of an impairment listed at 20 C.F.R. pt. 404, subpt. P, app. 1. (*Id.*). Specifically, the ALJ determined that the medical evidence failed to show that Plaintiff's

impairments are attended by any findings specified in Section 4.01 (cardiovascular system), Section 9.08 (diabetes), and Section 12.04 (affective disorders). The ALJ found that Plaintiff has a depressive disorder but that the record indicates that Plaintiff's mental health treatment had been routine and conservative. (Tr. 31). Moreover, the ALJ found that treatment had been generally successful in controlling his symptoms. (*Id.*). The ALJ determined that Plaintiff retains the RFC to perform light work[3], provided that Plaintiff is excluded from working with the general public. (Tr. 31 - Finding No. 5). The ALJ further found that Plaintiff could not perform any of his past relevant work. (Tr. 33 - Finding No. 6).

The ALJ called a vocational expert ("VE") to testify during the hearing. (Tr. 60-63). The VE was present throughout the hearing and familiar with Plaintiff's background. (*Id.*). The VE testified that an individual with Plaintiff's limitations could perform jobs which exist in significant numbers in the regional and national economies. (Tr. 60-63). Based on the VE's testimony, the ALJ found that a significant number of jobs exist in the national economy that Plaintiff is capable of performing and that Plaintiff was not under a disability at any time through the date of the decision. (Tr. 34).

### III.    Plaintiff's Argument for Remand or Reversal

Plaintiff seeks to have the ALJ's decision, which became the final decision of the Commissioner following the denial of review by the Appeals Council, reversed, or in the alternative,

---

[3] "Light work involves lifting no more than twenty (20) pounds with frequent lifting or carrying of objects weighing up to ten (10) pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting much of the time with some pushing and pulling of arm and leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

remanded for further consideration. (Doc. #11). Plaintiff appears to assert two reasons why this court should grant the relief sought: (1) the ALJ's RFC determination is not supported by substantial evidence, and (2) the ALJ's determination applied incorrect legal standards.

## IV.     Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## V. Discussion

It is undisputed that Plaintiff satisfied his *prima facie* burden of establishing an inability to return to his past relevant work. (*See* Tr. 33 - Finding No. 6). Plaintiff therefore, takes issue with the ALJ's RFC findings. The court begins its analysis by noting that it is Plaintiff who bears the ultimate burden of proving his disability. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. .2003); 42 U.S.C. § 423(d)(1)(A), (d)(5). Plaintiff must provide relevant medical and other evidence to carry his burden to establish physical or mental impairments. 20 C.F.R. §§ 404.1512(a)-(c); 416.912(a)-(c); 404.1513(e); 416.913(e); 404.1516; 416.916. Once the ALJ determines that there are underlying physical or mental impairments that could reasonably be expected to produce the claimant's pain or other symptoms, the ALJ must then evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit their ability to do basic work activities. 20 C.F.R. § 404.1529; *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). Whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the statements based on the entire record. For the reasons outlined below, the court finds that the ALJ relied on substantial evidence and applied the proper legal standards.

### A.     Hypertension/Diabetes

The record discloses a long history of treatment and symptoms related to Plaintiff's hypertension and Type II diabetes mellitus. The ALJ properly noted that a long history of undergoing treatment for these alleged impairments weighs in Plaintiff's favor. (Tr. 32). Nonetheless, the ALJ pointed to objective elements in the record indicating that these impairments did not reach a disabling level. (*Id.*). Notably, the treatment for Plaintiff's Type II diabetes and hypertension had been largely

11

routine, conservative, and generally successful in controlling his symptoms. (Tr. 30-32). *See Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996) (finding the ALJ did not err in using evidence of Plaintiff's conservative treatment to discredit subjective complaints). Additionally, the record indicates at several points that Plaintiff's hypertension was under control and his diabetes managed with proper diet and exercise. (Tr. 190-97, 297, 310, 318-19).

The ALJ also seemed concerned with Plaintiff's failure to execute his physician's recommendations with complete fidelity. (Tr. 29-30, 32). *See Ellison v. Barnhart*, 355 F.3d at 1275 (noting that the ALJ may consider Plaintiff's failure to comply with medical treatment). Such lapses in compliance with medical direction invariably led to a downturn in Plaintiff's condition. (Tr. 288-89, 310, 312, 318-20). Plaintiff's hypertension and diabetes are generally controlled with proper diet, exercise and medication. (Tr. 190-91). However, at several points Plaintiff's condition worsened due to non-compliance with his physician's instructions. (Tr. 288-89, 310, 312, 318-20, 330). Moreover, the ALJ noted that although Plaintiff obtained treatment on a regular basis, he never sought to enlist the help of a specialist, suggesting that the symptoms might not have been as severe and Plaintiff contends. (Tr. 32). Based on the forgoing, the ALJ did not err in concluding that Plaintiff's hypertension and diabetes did not pose significant limitations on his ability to perform work-related activities.

      **B.**    **Depressive Disorder**

Although Plaintiff contends his diabetes and hypertension to be his most significant work impairing ailments, his depressive disorder appears to take precedence. The evidence supports the ALJ's conclusion that Plaintiff's depressive disorder qualifies as "severe" within the meaning of the Regulations. (Tr. 27-30). However, the ALJ went on to conclude that Plaintiff's depressive disorder

was not severe enough to meet or medically equal one of the impairments listed in the Regulations. (Tr. 30-31). Specifically, the ALJ found that Plaintiff's impairments were not attended by any of the findings specified in Section 12.04 of the regulations (affective disorders). (*Id.*). The ALJ further concluded that because Plaintiff's impairments did not cause more than moderate functional restrictions, Plaintiff retains the RFC to perform light work. (Tr. 31-33).

Although not specifically alleged, Plaintiff's most cogent attack on the propriety of the ALJ's decision appears to relate to the discounted medical source opinion of his treating psychiatrist, Dr. Donna Scott at the Madison County Mental Health Center. (Tr. 33). The opinion of a treating physician is generally granted substantial weight unless good cause exists for not heeding the treating physician's diagnosis. *See e.g. Broughton v. Heckler*, 776 F.2d 960, 961-62 (11th Cir. 1985) (per curiam). The ALJ stated that he was granting Dr. Scott's opinion "some weight" although he did not specify the exact quantum of the weight accorded. (Tr. 33). Logically, however "some" weight does not equate to "substantial" weight. Therefore, the ALJ did afford somewhat less value to Dr. Scott's opinion, though the depth of that discount appears limited. It is a well-established principle in the Eleventh Circuit that "[a] treating physician's report may be discounted when it is not accompanied by objective medical evidence or is wholly conclusory." *Edwards v. Sullivan,* 937 F.2d 580, 583-84 (11th Cir. 1991); *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1159 (11th Cir. 2004) (a treating physician's opinion may be rejected or discounted if the record supports such a finding). The regulations also establish that a treating physician's opinion should be given significant weight only if it is well supported by clinical or laboratory findings, is not internally inconsistent, and is consistent with other evidence. *See* 20 C.F.R. §§ 404.1527(b), (c)(2) and (d)(3)-(4); 416.927(b), (c)(2) and (d)(3)-(4).

In her medical source opinion, Dr. Scott opined that Plaintiff's ability to function in several mental work-related activities was "seriously limited but not precluded," and that Plaintiff was "unable to meet competitive standards" in several other work-related activities. (Tr. 258-62). Specifically, Plaintiff was seriously limited, but not precluded in categories such as, ability to work with others without distraction, make simple decisions, remain punctual, preform at a consistent pace, and get along with co-workers or peers. (Tr. 260). It was also determined that Plaintiff was unable to meet competitive standards in categories such as completion of a normal workday, ability to accept instruction, respond to normal changes in work setting, and ability to deal with normal work stress. (*Id.*).

Although the ALJ did not specify which elements of the record justified a discount with regard to the weight afforded to Dr. Smith's opinion, several aspects of the record supply a basis for such a determination. For example, the ALJ found that Plaintiff's history of mental treatment has been "essentially routine and conservative in nature," and that it had been "generally successful in controlling his symptoms." (Tr. 32). Evidence of conservative treatment may be properly used to discredit subjective complaints. *Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996). In July 2007, Plaintiff stated on numerous occasions that his anger was better after taking Paxil and denied having any delusions or hallucinations. (Tr. 208-09). Plaintiff also reported in August 2007 that his anger was more under control after starting on the medication Celexa and that he had begun socializing more. (Tr. 228). The ALJ also noted evidence, such as the March 2007 determination of psychiatrist Dr. William Temple, that Plaintiff did not meet the criteria for a major depressive disorder. (Tr. 217-

18). Additionally, Plaintiff's GAF score was routinely around 55[4] even at times when he was not taking his medication. (Tr. 33, 301-02, 295, 283).

Plaintiff's contentions of absolute disability are bolstered by the fact that in July 2008, Plaintiff's GAF score was 50. (Tr. 343). Such a score is in the upper limits of the range of scores indicating serious mental symptoms and is therefore indicative of a disabling impairment. *See* DSM-IV-TR at 34. However, several factors mitigate against the impact of that score. First, every other GAF performed assigned a score of 55, indicating that Plaintiff was only in the moderately impaired range (GAF 51-60). Second, even assuming Plaintiff's GAF score of 50 in July 2008 constituted a disabling limitation at that time, the record does not indicate that such a limitation lasted through November 2008 when the ALJ's decision was rendered. This fact is especially important when one considers that it is Plaintiff's burden to satisfy the durational requirement, *i.e.* that the inability to work lasted for a continuous period of at least twelve months. 20 C.F.R. §§ 404.1505(a), 416.905(a); *Barnhart v. Walton*, 535 U.S. 212, 217-25. Third, the GAF score of 50 was rendered ten months after Dr. Scott's medical source opinion and thus could not have formed a basis for that opinion, a fact which points to the reasonableness of the ALJ's decision to afford slightly less weight to her opinion.

The record provides further support for the ALJ's decision to discount Dr. Scott's opinion and the conclusion that Plaintiff maintained the ability to perform certain types of light work. For instance, the ALJ properly considered evidence of Plaintiff's daily activities. (Tr. 33). *See Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987) (ALJ may consider evidence regarding daily activities during the evaluation process); 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (ALJ is required to

---

[4]A Global Assessment of Function score of 55 is indicative of moderate difficulty in social, occupational, or school functioning. *See* AMERICAN PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL 34 (4th ed. Text revision 2000) (SM-IV-TR).

consider Plaintiff's daily activities in evaluating subjective complaints). The ALJ concluded that Plaintiff's daily activities of cooking, shopping, going to the gym, paying attention to T.V. shows, and reading several hours a day were inconsistent with allegations of total disability. (Tr. 157-61, 251).

The ALJ also noted that Plaintiff told Dr. Harris in February 2008 that Celexa was helpful and that he had done well on the medication until discontinuing its use several weeks prior. (Tr. 314). Additionally, on October 1, 2007, one week prior to Dr. Scott's medical source opinion, Plaintiff was noted as being positive and that he was "trying to get his life back together" and "working to control his anger." (Tr. 28, 264). The ALJ also considered the State Agency medical consultant's and disability examiner's opinions regarding Plaintiff's mental and physical limitations. (Tr. 33). Both of these opinions concluded that Plaintiff was only moderately limited in the performance of certain work-related activities and capable of performing jobs within the national economy. (Tr. 52-55, 240-502). The ALJ was, however, careful to point out that neither of these opinions were performed by a treating physician and were therefore entitled to "little weight." (Tr. 33).

The Commissioner contends that Dr. Scott's own treatment notes are inconsistent with her opinion. (Comm. Mem. 7). To support this position, the Commissioner argues that in July 2007, Dr. Scott noted that Plaintiff told her that his anger was better controlled when taking Paxil. (Tr. 230). Plaintiff's mental status exams from Dr. Scott's office also showed that his orientation, memory, and his attention/concentration were within normal ranges. (Tr. 232). In August 2007, after being on Celexa for only a few weeks, Dr. Scott noted that Plaintiff reported that his anger was better controlled, he was more normal, he was socializing more, and his mood had improved. (Tr. 228).

Whether or not Dr. Scott's notes are internally inconsistent with her opinion, there is certainly sufficient objective evidence contained in the record to justify the ALJ's decision to afford slightly

less weight to her opinion. Ultimately, it is within the ALJ's discretion to evaluate and make findings regarding Plaintiff's subjective complaints as part of his RFC determination. *See* 20 C.F.R. §§ 404.1545, 416.945. While medical opinions from treating physicians are generally afforded significant weight, discretion to perform an RFC assessment resides at all times with the ALJ. 20 C.F.R. § 416.946(c). Given the record before him, the ALJ properly performed this function and was not making an independent medical judgment.

In any event, Plaintiff has failed to demonstrate any error in the ALJ's discount of weight to Dr. Scott's opinion because her assessment of function, while restrictive, does not necessarily conflict with the ALJ's RFC determination. Dr. Scott's opinion states that, "[Plaintiff] could be difficult to work with due to paranoia . . ." and that his "depression, focus, and concentration makes it difficult or presents a challenge for . . .work." (Tr. 260). However, Dr. Scott also opined that with individual therapy, psychiatric assessments, and medication management, Plaintiff's depressive disorder would remain stable. (Tr. 258). While far from a ringing endorsement of Plaintiff's functional capacity, Dr. Scott's assessment is not inherently at odds with the ALJ's finding that Plaintiff retained the ability to preform light work outside of the presence of the general public. Plaintiff has simply failed to present any evidence to refute this conclusion. Thus, Plaintiff did not show prejudice emanating from the ALJ's decision to only grant some weight to Dr. Smith's medical source opinion.

Even in light of his attack on the ALJ's decision to place less weight to Dr. Scott's opinion, in order to succeed on appeal, Plaintiff must show that the ALJ's decision does not rest on substantial evidence. The Commissioner and the ALJ, not this court, are charged with the duty to weigh the evidence, to resolve the material conflicts in the testimony and determine the case accordingly. *Wheeler v. Heckler*, 784 F.2d at 1075. Thus, even if this court were to disagree with the ALJ's

resolution of the factual issues, his decision is due to be affirmed if it is supported by substantial evidence when viewing the record as a whole. *See Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). As outlined above, the ALJ considered evidence from a multitude of sources which support his ultimate determination of the matter. There is nothing in the record to suggest that the ALJ's conclusions were not based on substantial evidence and Plaintiff has failed to produce any additional evidence or legal arguments suggesting otherwise. The ALJ had before him an array of evidence that forms a sufficient basis for his opinion. Based on the foregoing, this court finds that the evidence in the record provides substantial evidence to support the ALJ's decision to discount Dr. Scott's opinion and justifies the ALJ's RFC determination with regard to Plaintiff's depressive disorder.

    **C.**    **Civil Rights Claim**

In addition to a petition for review of the final decision of the Commissioner, Plaintiff also generally contends that in denying his application for Social Security Benefits, the Commissioner violated his civil rights under the Civil Rights Act of 1964. It is well settled that "[t]he United States, as a sovereign, is immune from suit save as it consents to be sued, . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *Lehman v. Nakshian*, 453 U.S. 156, 160 (1981) (quoting *United States v. Testan*, 424 U.S. 392, 399 (1976); *United States v. Sherwood*, 312 U.S. 584, 586-87 (1941)). Congress possesses the power to prescribe the conditions under which judicial review of administrative orders may be entertained. *Tacoma v. Taxpayers of Tacoma*, 357 U.S. 320, 336 (1958). Thus, no finding of the Commissioner may be reviewed except as expressly provided by the Act. 42 U.S.C. § 405(h); *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 8-9 (2000). Sections 205(h) of the Social Security Act provides that:

>No findings of fact or decision of the Commissioner shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Commissioner, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.

42 U.S.C. § 405(g) and (h).

This statutory provisions makes clear that only civil actions brought under Title II or Title XVI of the Social Security Act entitles Plaintiff to review of the final decision of the Commissioner. This is true because where a right to sue is a creature of statute and that statute provides a special remedy, that remedy is exclusive. *United States v. Babcock*, 250 U.S. 328, 331 (1919). Consequently, this court does not have jurisdiction over Plaintiff's civil rights claim. Thus, Plaintiff's request for review and damages under the Civil Rights Act of 1964 is due to be denied.

### VI.   Conclusion

For the reasons stated above, the court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination. The Commissioner's final decision is therefore due to be affirmed, and a separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this     25th     day of March, 2010.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE